OPINION
{¶ 1} Defendant-appellant, Janet Cooper, appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, granting the motion of plaintiff-appellee, Todd Cooper, to modify his child support and spousal support obligations. We affirm the decision of the trial court.
 {¶ 2} The parties divorced in December 2001. Todd was ordered to pay child support for their two minor children in the amount of $846.86 per child per month. Todd was also ordered to pay spousal support for six years ($2,400 per month for the first two years; $2,300 per month for the following two years; and $2,200 per month for the last two years). At the time of the divorce, Todd was employed with Anthem. Janet was not employed outside the home. Todd's child support and spousal support obligations were calculated based upon his annual base pay of $116,000, his bonus income of $33,004.82, and Janet's imputed income of $10,920. In its decree, the trial court specifically reserved jurisdiction over the amount and duration of spousal support.
 {¶ 3} On July 29, 2002, the magistrate reduced Todd's child support obligation to $623.06 per child per month. The reduction was based upon Todd's annual base pay of $117,813.04, the yearly average of his bonuses for 2000, 2001, and 2002 ($40,310.83), Janet's $31,886.40 annual income as a full-time receptionist, and the inclusion of Todd's spousal support obligation in the child support calculation. The magistrate declined to modify Todd's spousal support obligation.
 {¶ 4} On July 31, 2002, Todd moved to modify his child support and spousal support obligations on the ground that he was unemployed. Todd was terminated on July 15, 2002 and did not receive a severance package. He received unemployment compensation for about three months. On October 28, 2002, Todd started a new job at Caremark for an annual salary of $124,000. Todd is eligible for bonuses at Caremark. However, unlike at Anthem, they are limited to a maximum of 20 percent of his salary.
 {¶ 5} On January 13, 2003, the magistrate granted Todd's motion, finding "that there has been a change in circumstances since the Decree of Divorce was journalized. [Todd's] employment was terminated, and the termination was involuntary. The Court further finds that, based on [Janet's] income and her expenses, that she has an ongoing need for financial support. The Court further finds that [Todd] was not financially able to provide spousal support during his period of unemployment, but is able to provide that support with his new employment, although in a reduced amount. * * *.
 {¶ 6} "A child support worksheet is attached, which includes [Todd's] income from unemployment compensation. The child support obligation as set forth on the attached worksheet varies from the current order by more than ten percent. There has been a substantial change in circumstances, warranting a modification of child support. * * *." Effective July 31, 2002, the magistrate suspended Todd's spousal support obligation and reduced his child support obligation to $163.06 per month per child. Effective October 28, 2002, the magistrate ordered Todd to pay $623.06 in child support per child per month, and $1,827.84 in spousal support until September 2003. Todd was ordered to pay spousal support in the amount of $1,692 in 2004 and 2005, and $1,592 in 2006 and 2007.
 {¶ 7} By decision and entry filed April 7, 2003, the trial court overruled Janet's objections and adopted the magistrate's January 13, 2003 decision. This appeal follows in which Janet raises four assignments of error.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "The Trial Court erred in finding that [todd's] termination of employment was involuntary thereby warranting a modification of both spousal and child support."
 {¶ 10} Assignment of Error No. 2:
 {¶ 11} "The Magistrate erred when she awarded a modification of spousal support for the period of July 15, 2002 through October 28, 2002 when father was voluntarily unemployed, and when she awarded a modification of spousal support effective October 28, 2002 after father resumed employment at a higher rate of pay."
 {¶ 12} Assignment of Error No. 3:
 {¶ 13} "The Magistrate erred in finding a substantial change in circumstances warranting a modification of child support effective July 31, 2002 and effective October 28, 2002."
 {¶ 14} Assignment of Error No. 4:
 {¶ 15} "The Magistrate erred when she failed to consider all sources of income for payment of support as required by statute."
 {¶ 16} We first consider Janet's first, second, and third assignments of error together. A trial court has broad discretion in determining a spousal support award, including whether or not to modify an existing award. Schultz v. Schultz (1996),110 Ohio App.3d 715, 724. Absent an abuse of discretion, a spousal support award will not be disturbed on appeal. Id. More than an error of law or judgment, an abuse of discretion connotes that the trial court's decision is arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 17} In order for a trial court to modify the amount or terms of spousal support, it must determine that (1) the divorce decree contained a provision specifically authorizing the court to modify the spousal support, and (2) the circumstances of either party have changed. R.C. 3105.18(E)(1). A change of circumstances "includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. 3105.18(F). The change of circumstances must be material, not purposely brought about by the moving party, and not contemplated at the time the parties entered into the prior agreement. See Shroyer v.Shroyer, Coshocton App. No. 01-CA-011, 2001-Ohio-1901. Whether a parent is voluntarily unemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal. Rock v. Cabral
(1993), 67 Ohio St.3d 108, 112.
 {¶ 18} An appellate court will not reverse a child support modification absent an abuse of discretion. Woloch v. Foster
(1994), 98 Ohio App.3d 806, 810. The modification of child support is governed by R.C. 3119.79(A). Under that section, if upon recalculation of the amount of child support, the new child support amount deviates from the existing order by at least 10 percent, "the deviation * * * shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount." "Income," for purposes of calculating child support, consists of the sum of the gross income of the parent and any "potential income" of the parent if voluntarily unemployed. R.C. 3119.01(C)(5) and (11). Thus, a trial court must find that a party is voluntarily unemployed before it can impute income to that party. Id. As a general rule, a voluntary reduction in earnings does not constitute a substantial change in circumstances warranting a modification of child support. Richardson v. Ballard (1996),113 Ohio App.3d 552, 554.
 {¶ 19} In the present matter, the testimony indicates Todd was terminated because of unsatisfactory job performance. There was no testimony as to why his job performance was unsatisfactory, or as to whether he had been warned about his job performance but failed to heed the warnings. Todd testified he was not sure why he was terminated but ventured that "[t]here were a lot of political reasons for [his] termination. Their expectations, [his] boss * * * was not familiar with [his] area of expertise * * *. She had different expectations for what the industry should (inaudible) as far as timing and all." Based upon the foregoing evidence, we cannot say that the trial court abused its discretion in finding that Todd was involuntarily unemployed. Janet's first assignment of error is therefore overruled.
 {¶ 20} Todd's involuntary unemployment between July and October 2002 amounted to a change of circumstances under R.C.3105.18(F) which in turn allowed the trial court to modify Todd's spousal support order during his unemployment. R.C.3105.18(E)(1). Rather than reducing Todd's spousal support obligation, the trial court chose to suspend it. We cannot say that the trial court's suspension of Todd's spousal support obligation while he was unemployed was so arbitrary, unreasonable, or unconscionable that it amounted to an abuse of discretion.
 {¶ 21} As required under R.C. 3119.79, upon Todd's motion to modify his child support obligation due to unemployment, the trial court recalculated his child support obligation using as income Todd's unemployment compensation. Because the trial court found Todd to be involuntarily unemployed, it did not abuse its discretion when it failed to impute potential income to him. R.C.3119.01(C)(5) and (11). In recalculating the new child support amount, the trial court found that it deviated from the previous order by more than 10 percent. As a result, the deviation was "a change of circumstance substantial enough to require a modification of the child support amount." R.C.3119.79(A).[1] The trial court, therefore, did not abuse its discretion in reducing Todd's child support obligation during his unemployment.
 {¶ 22} Likewise, we find no abuse of discretion in the trial court's modification of Todd's child support and spousal support obligations once he became employed with Caremark. Pursuant to R.C. 3105.18(E) and (F), Todd's full employment with Caremark resulted in a change of circumstances which in turn warranted a modification of Todd's spousal support obligation. Likewise, Todd's full employment with Caremark warranted a modification of his child support obligation under R.C. 3119.79(A). Janet's second and third assignments of error are therefore overruled.
 {¶ 23} In her fourth assignment of error, Janet argues that the trial court erred by failing to consider all sources of income when it modified Todd's child support and spousal support obligations. Janet asserts that the trial court abused its discretion when it failed to include (1) the 2000, 2001, and 2002 bonuses Todd received from Anthem, (2) the $42,000 he received "for his portion of equity in the marital residence when it was sold in 2001," (3) his life insurance policy "with a cash value of at least $2,600," (4) his $4,141 income tax refund, (5) his $15,000 signing bonus from Caremark, (6) $200 from a telephone survey, and (7) the $2,576 payment he received for two advisory boards he attended in 2002.
 {¶ 24} R.C. 3119.01(C)(7) defines "gross income" as the "total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in [R.C.] 3119.05(D); commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; * * * unemployment insurance benefits; * * * spousal support actually received; and all other sources of income." "Gross income" does not include "nonrecurring or unsustainable income or cash flow items," that is, "an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." R.C. 3119.01(C)(8).
 {¶ 25} The trial court found that Todd's $15,000 signing bonus and the $2,576 payment he received from the advisory boards were "one-time events, which are nonrecurring and unsustainable cash flow items, for the purpose of calculating child support." We agree. Todd testified advisory boards only happen once and that one can attend only by invitation from the drug manufacturer. A letter from Caremark indicates that the $15,000 signing bonus is "a one-time bonus." See Walker v. Walker, Delaware App. No. 02CAF04019, 2002-Ohio-5293 (signing bonus was a nonrecurring benefit which was not includable in calculating father's gross income).
 {¶ 26} Likewise, we find that the $42,000 he received for his equity in the marital residence sold in 2001, his $4,141 income tax refund, and the $200 payment he received from a telephone survey were "nonrecurring or unsustainable income or cash flow items" under R.C. 3119.01(C)(8). They, therefore, cannot be included in Todd's gross income. With regard to Todd's life insurance policy "with a cash value of at least $2,600," we find that it does not fit the definition of "gross income" under R.C.3119.01(C)(7). While Todd has this policy, there is no evidence he received any life-insurance benefits. We therefore find that the trial court did not err by failing to include in Todd's gross income the signing bonus, the telephone survey payment, the advisory boards payments, the life insurance policy, the income tax refund, and the marital equity from the sale of the marital residence.
 {¶ 27} Turning now to the bonuses Todd received from Anthem in 2000, 2001, and 2002, we note that bonuses are included in the definition of gross income under R.C. 3119.01(C)(7). Pursuant to R.C. 3119.05(D), "[w]hen the court * * * calculates the gross income of a parent, it shall include the lesser of the following as income from overtime and bonuses: (1) The yearly average of all overtime, commissions, and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed; (2) The total overtime, commissions, and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed."
 {¶ 28} The magistrate calculated Todd's child support and spousal support obligations in 2003. In one worksheet, the magistrate used Todd's unemployment compensation from July to October 2002, the period during which Todd was unemployed. The magistrate did not include the bonuses Todd received from Anthem between 2000 and 2002. In another worksheet, the magistrate used Todd's new base pay at Caremark, beginning October 2002. Again, the magistrate did not include the bonuses Todd received from Anthem.
 {¶ 29} While Todd received bonuses from Anthem between 2000 and 2002, there is no evidence Todd received a bonus (other than the signing bonus) from Caremark in 2002 or prior to the magistrate's 2003 computation of Todd's child support obligation. R.C. 3119.01(C)(7) clearly states that the bonuses included in the gross income of a parent must be "to the extent described in [R.C.] 3119.05(D)." That section in turn requires a trial court to include bonuses received during the year(s) "immediately prior to the time when the person's child support is being computed." As noted above, there is no evidence Todd received a bonus from Caremark in 2003, which is immediately prior to the time the magistrate computed the child support.
 {¶ 30} In addition, Todd no longer works for Anthem. InWalker, the father appealed the trial court's calculation of his gross income on the ground that the court should have averaged his bonuses over a three-year period, that is, 2001, the year he received a $47,708.64 bonus, and 2000 and 1999, the years he did not receive a bonus. Rather than averaging the three years, the trial court simply included the 2001 bonus with the father's base pay based upon R.C. 3119.05(D)(2). The record indicated that while the father worked for PNC in 2001, he worked for a different employer in 2000 and 1999. The Fifth Appellate District upheld the trial court's decision: "[father] did not work for his present employer in 2000 and 1999. It would be inconsistent to compare a current compensation benefit package against a previous employer's benefit package." Walker, 2002-Ohio-5293, at ¶ 23.
 {¶ 31} We find that the Fifth Appellate District's reasoning applies to the case at bar. Todd is no longer employed by Anthem. The trial court, therefore, did not err by failing to include the bonuses received by Todd from Anthem in its calculation of Todd's gross income while he was unemployed and when he was working for Caremark. Janet's fourth assignment of error is overruled.
 {¶ 32} Judgment affirmed.
Walsh and Valen, JJ., concur.
[1] Janet also argues that based upon Todd's "higher rate of income" at Caremark and the trial court's failure to include several items in Todd's gross income, Todd's child support and spousal support obligations should have been higher once he was no longer unemployed. The trial court's failure to include items in Todd's gross income is addressed in Janet's fourth assignment of error. With regard to Todd's $124,000 base pay at Caremark, we note that while it is higher than his $117,813 base pay at Anthem, Janet's income is also higher than it was ($33,155 versus $31,886).