OPINION
{¶ 1} John Bruno, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, in which the court sustained the objections of Debra Bruno, plaintiff-appellee, to the magistrate's decision and adopted the child support computation worksheet submitted by appellee.
 {¶ 2} The parties were married in August 1980, and three children were born as issue of the marriage, all of whom are minors. The parties divorced in November 2001. Appellee was designated as the sole residential parent/legal custodian, and appellant was ordered to pay total child support for all three children in the amount of $1,906.08 per month, plus processing charge.
 {¶ 3} Appellant was employed by CNG Financial Corporation ("CNG") during tax years 2001, 2002, and 2003. For tax year 2001, appellant's salary was $150,000, with a year-end bonus of $172,076. For tax year 2002, appellant's salary was $250,000 with a year-end bonus of $125,000. Appellant worked for CNG until August 2003, at which time he was notified he was being terminated. CNG paid appellant severance pay through November 30, 2003. Appellant received no income for December 2003. For tax year 2003, appellant's income was $246,542, which included compensation of $123,271 for the last six months of 2003.
 {¶ 4} On January 1, 2004, appellant began employment with Milestone Advisors, for which he was to be paid $5,000 per month for a six-month probationary term. After the first six months, appellant's income was to be increased to $12,500 per month. From January 15 through June 30, 2004, appellant's total income was $27,351.91. In early July 2004, appellant learned that Milestone Advisors was extending his probationary period to September 30, 2004, until which time he would continue earning $5,000 per month.
 {¶ 5} Appellee was employed as a nurse, and, for tax year 2003, her income was $62,154. Appellee's income for tax year 2004 was $61,230.
 {¶ 6} The parties filed numerous post-decree motions, including appellant's motion to modify child support. The parties eventually filed a memorandum of agreement, in which they resolved all of the issues included in the motions except for the amount of child support appellant was to pay commencing January 1, 2004. A hearing was held before a magistrate on July 15, 2004. The sole issue before the magistrate was what amount should be used for appellant's income on Line 1.a. of the child support computation worksheet. After presenting evidence on the issue, the parties submitted to the magistrate proposed child support worksheets, each of which included identical figures except for appellant's income on Line 1.a. Appellant used $60,000 on Line 1.a. of his worksheet, resulting in a total proposed child support order of $1,195.79 per month, plus processing charge, and appellee used $150,000 on Line 1.a. of her worksheet, resulting in a total proposed child support order of $1,991 per month, plus processing charge. On August 31, 2004, the magistrate issued a decision, adopting appellant's child support worksheet and ordering total child support of $1,195.79 per month, plus processing charge.
 {¶ 7} On September 13, 2004, appellee filed objections to the magistrate's decision, arguing that appellant's income was only temporarily at the rate of $60,000 per year, and was lower than his anticipated income of $150,000 per year and his total income of $150,622 for the 12 months preceding the hearing. After a non-evidentiary hearing, on December 14, 2004, the trial court issued a decision and entry, in which it sustained appellee's objections, overruled the magistrate's decision, and adopted appellee's child support worksheet that used $150,000 as appellant's income. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
[I.] The trial court improperly imputed income to the Appellant, meaning that it applied the wrong measure of income for purposes of calculating his base income. This means that the trial court abused its discretion in overruling the magistrate's proper decision in this case.
[II.] The trial court's [sic] misapplied this Court's ruling inFrost v. Frost, leading to the trial court's abuse of its discretion in overruling the magistrate's report in this case.
 {¶ 8} We will address appellant's first and second assignments of error together, as they both relate to whether the trial court erred in sustaining appellee's objections to the magistrate's decision and in using $150,000 as appellant's gross income for purposes of child support. Appellant argues in his first assignment of error that the trial court improperly imputed income to him. Appellant argues in his second assignment of error that the trial court misapplied this court's ruling in Frost v.Frost (1992), 84 Ohio App.3d 699.
 {¶ 9} A trial court has considerable discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 10} R.C. 3119.01(C) provides, in pertinent part, the following definition of "gross income" for child support purposes:
(7) "Gross income" means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. * * *
 {¶ 11} In the present case, the trial court found appellant's annual gross income was $150,000 for purposes of Line 1.a. on the child support worksheet. Although it is difficult to discern upon which basis the trial court made its determination, the trial court discussed two distinct theories for using $150,000 as appellant's gross income: (1) for the 12 months prior to the hearing, appellant's income totaled approximately $150,000, which included $123,271 for the last six months of 2003, and $27,351.91 for the first six months of 2004; and (2) $150,000 is the probable income appellant would have earned based upon his recent work history.
 {¶ 12} With regard to the first rationale, that, for the 12 months prior to the hearing appellant's income totaled approximately $150,000, the trial court cited this court's decision in Frost, supra, in which we found that, in calculating child support, a "`calendar year' may or may not coincide with a tax year." Id., at 711. As an example, we stated in Frost that "if a child support hearing is held in November, the `gross income' calculation would include the proportionate income from November and December of the previous year and January through the date of the hearing of the year in which the hearing is held." Id. Accordingly, pursuant to our decision inFrost, a court may utilize the gross income of the parent for the 12 months prior to the child support hearing to determine the child support amount.
 {¶ 13} However, R.C. 3119.01(C)(7) indicates that "gross income" does not include any "[n]onrecurring or unsustainable income or cash flow items[.]" R.C. 3119.01(C)(8) provides the following definition of nonrecurring or unsustainable income or cash flow item:
"Nonrecurring or unsustainable income or cash flow item" means an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis. "Nonrecurring or unsustainable income or cash flow item" does not include a lottery prize award that is not paid in a lump sum or any other item of income or cash flow that the parent receives or expects to receive for each year for a period of more than three years or that the parent receives and invests or otherwise uses to produce income or cash flow for a period of more than three years.
 {¶ 14} We find that, while it may be proper to consider income earned in the 12 months immediately preceding a child support hearing, pursuant to Frost, the $123,271 appellant earned for the last six months of 2003 constituted unsustainable income and could not be used for purposes of child support. Although appellant did earn annual sums far exceeding $150,000 in the years prior to the hearing, it was clear that appellant would not be earning these sums in the immediate future. Appellant's employment with Milestone Advisors in January 2004 was to provide him with gross income of only $5,000 per month for the first six months. Appellant was supposed to begin earning $12,500 per month commencing in July 2004; however, his probationary period at $5,000 per month was extended to September 30, 2004, after which his employment and salary was to be reassessed. As appellant was an employee-at-will, there was no guarantee that he would successfully complete the probationary period and ever begin earning $12,500. In fact, appellant's attorney represented to this court at oral argument that, at the time of the objections hearing on November 29, 2004, appellant's probation had been extended, and he continued to earn $5,000 per month. Thus, because there was no evidence presented that appellant expected to continue to receive on a regular basis the same income he received for the last six months of 2003, such income was "unsustainable" pursuant to R.C. 3119.01(C)(8). Therefore, we find that the trial court could not have properly utilized appellant's earnings from the prior 12 months to establish his gross income at $150,000 for purposes of child support.
 {¶ 15} With regard to the second basis discussed by the trial court, that $150,000 is the probable income appellant would have earned based upon his recent work history, the trial court cited the definition of "potential income," as provided in former R.C.3113.215. "Potential income" is now defined in R.C.3119.01(C)(11), which provides:
(11) "Potential income" means both of the following for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child support order, determines is voluntarily unemployed or voluntarily underemployed:
(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:
(i) The parent's prior employment experience;
(ii) The parent's education;
(iii) The parent's physical and mental disabilities, if any;
(iv) The availability of employment in the geographic area in which the parent resides;
(v) The prevailing wage and salary levels in the geographic area in which the parent resides;
(vi) The parent's special skills and training;
(vii) Whether there is evidence that the parent has the ability to earn the imputed income;
(viii) The age and special needs of the child for whom child support is being calculated under this section;
(ix) The parent's increased earning capacity because of experience;
(x) Any other relevant factor.
(b) Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate as determined by the court or agency, not to exceed the rate of interest specified in division (A) of section 1343.03 of the Revised Code, if the income is significant.
Thus, pursuant to R.C. 3119.01(C)(11), before a trial court may impute income to a parent, the court must make an explicit finding that the parent is voluntarily unemployed or underemployed. Apps v. Apps, Franklin App. No. 02AP-1072, 2003-Ohio-7154, at ¶ 48, citing Leonard v. Erwin (1996),111 Ohio App.3d 413, 417, and Clark v. Smith (1998),130 Ohio App.3d 648, 663. Further, once a party is found to be voluntarily unemployed or underemployed, the potential income to be imputed to that party must be determined in accordance with the considerations listed in R.C. 3119.01(C)(11). Id. Consideration of the factors set forth in R.C. 3119.01(C)(11) is mandatory. Id. A trial court's failure to consider these factors constitutes an abuse of discretion. Id., citing Badovick v. Badovick (1998),128 Ohio App.3d 18, 23.
 {¶ 16} In the present case, as we have found the trial court could not use appellant's prior 12 months of income to establish his gross income, in order to find appellant's gross income was $150,000, it would have had to impute income to appellant. However, the trial court made no explicit finding that appellant was voluntarily underemployed and, thus, could not impute any income to him. See Apps, at ¶ 48. Further, as our review of the record reveals no evidence to support a finding that appellant was voluntarily underemployed, we need not remand the matter for a determination of the issue. In deciding if an individual is "voluntarily underemployed" "[t]he test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned." Woloch v. Foster (1994), 98 Ohio App.3d 806, 811. Further, the trial court must weigh the facts and circumstances of each particular case in determining whether a parent is voluntarily underemployed. Rock v. Cabral (1993),67 Ohio St.3d 108.
 {¶ 17} At the hearing before the magistrate in the current case, appellant testified he was involuntarily terminated from his prior job with CNG in August 2003, but began searching for comparable employment even before he was officially terminated. He began his job with Milestone Advisors in January 2004. Although it is apparent that appellant demonstrated in the past that he had the ability to earn a significant income, there was no evidence put forth that appellant failed to execute a diligent job search, accepted a job that was below the market value of his combined skills given the current employment climate for his particular profession, or purposefully sought employment that involved any different characteristics that may have translated into decreased compensation, e.g., less hours, less travel, or less stress. See, e.g., Key v. Key (Oct. 23, 1998), Montgomery App. No. 16993 (court will not penalize parent by imputing income when parent has made a diligent effort to find comparable employment). Indeed, because appellant had the potential to earn $150,000 per year after only six months of employment under the initial probationary terms, it would appear that his employment with Milestone Advisors was a reasonable career choice. Further, there was no evidence that appellant disregarded the financial needs of his children in taking the job with Milestone Advisors or had any intent to frustrate the child support order. Instead, it appears as though appellant made a good-faith decision to take a job that gave him the potential to earn an income consistent with his base salary in a prior year, although there was no guarantee that he would earn such an amount. See id. (engaging in a good-faith, significant search for employment close to prior wage demonstrates the requisite regard for the child's best interests). Thus, we find there was no evidence to demonstrate appellant was voluntarily underemployed. Once it is determined that the parent is not voluntarily underemployed, a court must compute gross income at what the parent is earning at the new place of employment. See Phillips v. Phillips (Sept. 13, 2001), Cuyahoga App. No. 78340. Accordingly, the trial court in the current case could not have relied upon a finding of voluntary underemployment to impute income of $150,000 to appellant for purposes of child support.
 {¶ 18} As the trial court could rely upon neither appellant's income for the 12 months immediately preceding the child support hearing nor appellant's voluntary underemployment to establish appellant's gross income at $150,000, the court erred in utilizing such amount in computing appellant's child support obligation. The evidence demonstrated that, at the time of the hearing before the magistrate and trial court, appellant was earning an annualized gross income of $60,000. Although it was clearly possible that appellant could begin earning significantly more than $60,000 in the future, such was not a certainty as of the date of the hearings below. The trial court's use of a gross income figure that differed from appellant's current and near future income was improper. For these reasons, the trial court should have found appellant's gross income for purposes of child support was $60,000. Appellee's remedy lay in seeking further modification of child support when, and if, appellant's income increases. Therefore, appellant's first assignment of error is sustained. Further, given this determination, we find appellant's second assignment of error with regard to the trial court's application of Frost to be moot.
 {¶ 19} Accordingly, appellant's first assignment of error is sustained, and appellant's second assignment of error is moot. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is reversed, and this matter is remanded to that court for proceedings in accordance with law, consistent with this opinion.
Judgment reversed; cause remanded.
Bryant and Klatt, JJ., concur.