OPINION
{¶ 1} Appellant, Matthew J. Rice ("Mr. Rice"), appeals from a judgment of the Geauga County Court of Common Pleas, Domestic Relations Division, in which the trial court granted appellee, Lori A. Rice (now known as "Ms. Kaminski") a divorce, divided the parties' property and debts, and awarded spousal support and child support. *Page 2 
 {¶ 2} Statement of Facts and Procedural History
 {¶ 3} Matthew Rice and Lori Kaminski were married on April 24, 1992. Five children were born of this marriage. On August 2, 2005, in Case No. 2006-G-2716, Ms. Kaminski filed her complaint for a divorce and obtained a temporary restraining order to, inter alia, prevent Mr. Rice from disposing of marital property and from incurring additional debts.
 {¶ 4} Ms. Kaminski also filed, in Case No. 2006-G-2717, a petition for a domestic violence civil protection order, which was subsequently consolidated with the divorce case. On August 18, 2004, the parties entered into a consent agreement, and the court issued a civil protection order against Mr. Rice. The order named Ms. Kaminski the temporary residential parent and granted her exclusive possession of the marital residence. Mr. Rice was prohibited from entering the marital home and from contacting or abusing Ms. Kaminski. In addition, under the terms of the August 18, 2004 order, Mr. Rice specifically agreed to pay the mortgage, real estate taxes, utilities, insurance payments, and private school tuition. He also agreed to pay $500 per week for household expenses. The order also granted Mr. Rice supervised visitation with his children, which later became unsupervised visitation.
 {¶ 5} Subsequently, on October 7, 2005, Ms. Kaminski filed a contempt motion against Mr. Rice on the ground that he failed to comply with the terms of the August 18, 2004 civil protection order. With respect to his monetary obligations, Ms. Kaminski alleged that he failed to make any of the agreed upon payments. In turn, Mr. Rice filed *Page 3 
a motion to show cause against Ms. Kaminski for failing to abide with the parties' visitation schedule.[1]
 {¶ 6} The parties reached an agreement regarding their motions to show cause, which the court journalized in an order dated November 1, 2005. Under this order, the parties agreed that Mr. Rice would withdraw $20,000 from his Morgan Stanley retirement account and pay Ms. Kaminski $10,000.[2]
 {¶ 7} The final hearing was held on February 21 and February 22, 2006. Mr. Rice testified that he had owned two businesses; an ice arena known as Arctic Freeze and another entity called Sports Weekend, Inc. Mr. Rice purchased Arctic Freeze in December 2001 for $1,200,000, but Arctic Freeze went into receivership in November, 2005.
 {¶ 8} Sports Weekend, Inc. was a sports promotion business Mr. Rice started in 1990 through which he organized youth and adult hockey tournaments in different venues around the country. The business was profitable through at least 2002 and provided Mr. Rice with his main source of income, which ranged from $215,000 in 1999 to close to $300,000 in 2001. Mr. Rice further testified that Sports Weekend, Inc. was no longer in existence but that he hoped to reinstitute the company in the near future.
 {¶ 9} Mr. Rice also testified that he was unemployed and that he had made no prior efforts to seek employment. However, he stated that he had scheduled an *Page 4 
appointment with a headhunter, and that he expected to be able to work in some capacity at the ice arena.
 {¶ 10} Ms. Kaminski testified that she had a high school diploma and stayed at home during the course of the marriage to raise their five children. She recently became employed at Southwest General Hospital in a part-time capacity, earning $13.30 per hour. Ms. Kaminski further testified that she had not received any money from Mr. Rice since the summer of 2005. Because of this, the marital home, appraised at $610,000, was in foreclosure and numerous bills went unpaid. Ms. Kaminski went on food stamps for a time and received some financial assistance from her father.
 {¶ 11} The parties both conceded that there remained only one marital asset; a Morgan Stanley retirement account valued at $185,751.26. Mr. Rice had a second Morgan Stanley retirement account worth $51,923.18 on March 31, 2004, but he depleted most of the account so that the balance remaining was approximately $1,000 on the day of trial. Mr. Rice testified that he withdrew $50,389.69 from the account on April 23, 2004, in order to pay for business and family expenses but offered no proof as to how this money was actually expended.
 {¶ 12} With respect to the children, a guardian ad litem (GAL) was appointed. The GAL testified that that, in her opinion, it was in the best interests of the children that Ms. Kaminski be designated the residential parent.
 {¶ 13} The magistrate issued findings of fact and conclusions of law. The magistrate recommended that the parties be granted a divorce on the grounds of incompatibility, and that Ms. Kaminski be named the residential parent. The magistrate *Page 5 
further recommended that Mr. Rice be found guilty of contempt for failure to abide by the court's prior rulings.
 {¶ 14} Specifically, with respect to the division of property and support obligations, the magistrate found that Mr. Rice is voluntarily unemployed, and that based upon his past earnings and his plans to re-establish Sports Weekend, Inc. his income should be imputed at the amount of $90,000. When compared to Ms. Kaminski's annual income of $16,598.40, the magistrate concluded that Mr. Rice must pay Ms. Kaminski the sum of $500 per month in spousal support for forty-eight months, to be paid in a lump-sum payment of $24,000 from his remaining Morgan Stanley account.
 {¶ 15} The magistrate recommended that Mr. Rice's motion to modify child support be granted and recommended that Mr. Rice's child support obligation be reduced to $1,998.66 per month. The magistrate also recommended that the arrearage Mr. Rice owed on his child support obligations should be paid from the Morgan Stanley account.
 {¶ 16} With respect to the Morgan Stanley account, valued at $185,751.26, the magistrate recommended that Ms. Kaminski receive $80,676.09 from the account and that the balance of the account be divided among the parties equally. The magistrate allotted Ms. Kaminski a larger portion of the account based upon the fact that Mr. Rice had previously withdrawn money from the other retirement account; had an arrearage for past support; owed an amount to purge a contempt order; and was ordered to pay a lump sum amount to Ms. Kaminski for spousal support. *Page 6 
 {¶ 17} Both parties filed objections to the magistrate's report. Because Ms. Kaminski failed to file a transcript, the trial court overruled her objections. The trial court overruled all but one objection raised by Mr. Rice, which concerned the disposition of the marital home. The court agreed with Mr. Rice's position that if there were, in fact, proceeds from the foreclosure of the marital home, then those proceeds would be deemed marital assets and were to be shared equally. The court also modified the arrearage amount Mr. Rice owed by $1,500, representing a credit owed him by Ms. Rice.
 {¶ 18} Appellant filed a timely notice of appeal, raising five assignments of error for our review:
 {¶ 19} "[1.] The trial court erred when it failed to take into account the tax liability that the Defendant-Appellant will have to incur in order to comply with the court's order regarding property division.
 {¶ 20} "[2.] The trial court erred when it awarded the Plaintiff-Appellee "lump sum spousal support" in the sum of $24,000.00 without considering the tax consequences of said award.
 {¶ 21} "[3.] The trial court erred when it awarded the Plaintiff-Appellee the sum of Twenty Five Thousand One Hundred Ninety Four Dollars and 85/100 ($25,194.85) as a division of marital property.
 {¶ 22} "[4.] The trial court erred when it found the Defendant-Appellant was in arrears in the sum of Twenty-Seven Thousand Nine Hundred Eighty One Dollars and 24/100 ($27,481.24) on the Court's order dated August 18, 2004. *Page 7 
 {¶ 23} "[5.] The trial court committed error in imputing income to the Defendant-Appellant in the sum of Ninety Thousand Dollars ($90,000) and further committed error in calculating child support based upon that figure."
 {¶ 24} Before discussing the merits of this appeal, it must be noted that appellee's brief was due on October 3, 2006. At the trial court level, appellee was represented by Kenneth Lewis of the law firm of Stafford and Stafford Co., L.P.A., who subsequently left that firm. Six days before the date set for oral argument, appellee through Attorney Gregory Moore of the Stafford firm, filed an Entry of Appearance of New Counsel/Substitution of Counsel and Motion for Extension of Briefing Period and Motion for Continuance of Oral Argument citing a "miscommunication in regard to representation in this appellate matter" as to whether Attorney Lewis was going to continue representing appellee on appeal. The motion was denied on March 19, 2007.
 {¶ 25} Three days before the date set for oral arguments, appellee filed a motion for leave to file her brief instanter with appellee's brief attached, and to, inter alia, continue oral arguments. That motion was also denied and appellee's brief was stricken. The matter proceeded to oral argument on March 22, 2007, and appellee's brief was not read or considered by the panel.
 {¶ 26} Standard of Review: Abuse of Discretion
 {¶ 27} A trial court is given broad discretion in the division of marital assets. Cherry v. Cherry (1981), 66 Ohio St.2d 348, paragraph two of the syllabus. Therefore, we will not disturb the trial court's distribution of marital property absent an abuse of discretion. We also review the award of spousal support and child support using an abuse of discretion standard. Id. An abuse of discretion connotes more than a mere *Page 8 
error of law or judgment; rather it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. Measor v. Measor,160 Ohio App.3d 60, 2005-Ohio-1417, at ¶ 9, citing Booth v. Booth (1989),44 Ohio St.3d 142, 144, and Blakemore v. Blakmore (1983), 5 Ohio St.3d 217,219.
 {¶ 28} Failure to Consider Tax Consequences
 {¶ 29} In his first and second assignments of error, Mr. Rice argues that the trial court abused its discretion in failing to consider the tax consequences he will have to incur in making distributions from his Morgan Stanley retirement account.
 {¶ 30} Mr. Rice was ordered to make the following distributions to Ms. Rice (totaling $79,176.09) from the Morgan Stanley account: $25,194.85 (representing one-half of the money Mr. Rice withdrew from the other retirement account in April 2004); $26,481.24 (for the arrearage owed on temporary orders); $24,000 (representing the lump sum spousal support award); and $3,500 (the purge amount owed on the court's finding of contempt). In its judgment entry, the court noted that to the extent there are penalties and fees relative to the division of the Morgan Stanley asset, the parties shall share the penalties in proportion to the amount being received by each. The court was silent as to the tax consequences of distributing this asset. Mr. Rice objected to the magistrate's failure to consider the tax consequences, but the trial court overruled Mr. Rice's objection without addressing the tax consequences argument.
 {¶ 31} Pursuant to R.C. 3105.171(F)(6), the trial court is required to consider the tax consequences of a property division. Likewise, R.C.3105.18(C)(1)(l) requires the court to consider the tax consequences, for each party, of an award of spousal support. In interpreting these Revised Code sections, the general rule is that, ordinarily, "if the *Page 9 
award is such that, in effect, it forces a party to dispose of an asset to meet obligations imposed by the court, the tax consequences of that transaction should be considered." Day v. Day (1988),40 Ohio App.3d 155, 159. However, "where an appellant has failed to produce evidence of tax consequences in the trial court * * * tax consequences are speculative and need not be considered." Bauman v. Bauman, 6th Dist. No. E-01-025, 2002-Ohio-2172, at ¶ 16. The rationale is that without evidentiary support to show what the tax consequences would be, the court would be asked to erroneously engage in determining the tax consequences of the transaction based upon mere conjecture or speculation. White v. White (Feb. 18, 1998), 9th Dist. No. 18275, 1998 Ohio App. LEXIS 538, at 9.
 {¶ 32} In Ferrero v. Ferrero (June 8, 1999), 11th Dist. No. 98-CA-00095, 1999 Ohio App. LEXIS 2848, at 15-16, we considered a similar argument regarding the trial court's failure to consider the tax consequences when distributing marital assets. Although the appellant had raised the tax issue to the court, he failed to produce any evidence as to what the tax consequences would be. In rejecting appellant's argument, we stated: "[t]he transcript shows that appellant failed to present any actual evidence on the tax issue beyond his argumentation. Under these circumstances, the trial court in this case was not obligated to consider the tax consequences because any determination on the issue would have been purely speculative. * * * Moreover, given that appellant offered no evidence on the tax issue at the trial court level, he has waived the right to assert this argument on appeal." (Citations omitted.)
 {¶ 33} Because Mr. Rice offered absolutely no evidence regarding what the potential tax consequences would be in making distributions from the Morgan Stanley *Page 10 
account, we are unwilling to find an abuse of discretion under these circumstances. Moreover, when considering whether a trial court has abused its discretion in dividing marital property, a reviewing court "should not review discrete aspects of the property division out of context of the entire award." Baker v. Baker (1992), 83 Ohio App.3d 700, citing Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222. Instead, a reviewing court "should consider whether the trial court's disposition of marital property as a whole resulted in a property division which was an abuse of discretion." Baker at 700-701. Thus, "a reviewing court may modify a property division only if it finds that the trial court abused its discretion by dividing the property as it did." Cherry at 355.
 {¶ 34} In this case, the trial court's distribution of the sole marital asset was reasonable and just under the circumstances. Mr. Rice did not comply with prior court orders and had failed to make payments to Ms. Kaminski during the pendency of the divorce action, with the exception of a court-ordered distribution of $10,000. To ensure that Ms. Kaminski would be compensated for the amount Mr. Rice was in arrears and to repay her for half of the amount of monies he had withdrawn from his other retirement fund, the court ordered distribution from the Morgan Stanley account.
 {¶ 35} As the court so aptly noted:
 {¶ 36} "To the extent possible, it is the Court's duty to disentangle these parties from each other financially. Under the circumstances, with Mr. Rice's history of not complying with court orders, his failure to make payments, and the existence of a liquid asset that will enable the court [to] disentangle the parties financially, it is just and appropriate that the Morgan Stanley account be used to make lump sum payments to *Page 11 
Ms. Rice for future spousal support, back support arrearage, the purge condition and reimbursement from money withdrawn from the parties marital account."
 {¶ 37} We overrule Mr. Rice's first and second assignments of error.
 {¶ 38} Repayment of Funds Withdrawn From Marital Asset
 {¶ 39} Mr. Rice admittedly withdrew $50,385.70 from a second Morgan Stanley account on April 23, 2004. The trial court ordered that Ms. Kaminski be compensated for half of the amount Mr. Rice withdrew from this account and that she be paid with funds from the remaining Morgan Stanley account. Mr. Rice contends that this was an abuse of discretion because he testified that he withdrew the money in order to pay household expenses and marital debt.
 {¶ 40} At the outset, we note that a trial court has the discretion to equitably divide marital property, including marital debt. Longo v.Longo, 11th Dist. No. 2004-G-2556, 2005-Ohio-2069, at ¶ 109. However, it was incumbent upon Mr. Rice to prove that he actually made payments to Ms. Kaminski to reduce his support obligations in order for the trial court to appropriately credit him with these payments. Other than his self-serving testimony and the introduction into evidence of a ledger he prepared, Mr. Rice offered absolutely no proof that he did, in fact, use this money to pay such expenses.
 {¶ 41} The trial court or magistrate, as the trier of fact, "is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections in order to assess their credibility and weigh the testimony." Hvamb v. Mishne, 11th Dist. No. 2002-G-2418, 2003-Ohio-921, at ¶ 18, citing Seasons Coal Co. v. Cleveland (1984), *Page 12 10 Ohio St.3d 77. Here, it is obvious that the court rejected Mr. Rice's explanation that he used the Morgan Stanley funds to pay, in part, family expenses.
 {¶ 42} As the court noted, there was ample evidence presented to suggest that the funds Mr. Rice withdrew from the second Morgan Stanley account were not in any way used to satisfy household expenses. Given the fact that the marital home was in foreclosure; the vehicles were repossessed; the utilities were shut off; the homeowner's insurance was canceled; and the parties' oldest daughter was forced to leave her private school, we find that the trial court did not abuse its discretion in rejecting Mr. Rice's self-serving testimony absent sufficient evidentiary proof to the contrary.
 {¶ 43} We overrule Mr. Rice's third assignment of error.
 {¶ 44} Determination of Arrearage for Child Support
 {¶ 45} In his fourth assignment of error, Mr. Rice argues that the trial court abused its discretion in computing his child support arrearages. In particular, he maintains that the trial court ignored payments he made subsequent to January 27, 2005, which he says were evidenced in a spreadsheet he devised and labeled as Exhibit G. We disagree.
 {¶ 46} The parties had entered into a consent agreement on August 18, 2004. At that time, Mr. Rice agreed to pay Ms. Kaminski $500 per week in household expenses, as well as the mortgage, real estate taxes, utilities, insurance payments, and private school tuition. On January 27, 2005, Mr. Rice filed a motion to modify the August 18, 2004 order. At the trial, the magistrate considered, inter alia, the motion to modify as well as Ms. Kaminski's motion to show cause. In addressing the motion to show cause, the magistrate specifically stated that there was insufficient evidence presented to *Page 13 
determine the exact amount that Mr. Rice should have paid Ms. Kaminski under the court's temporary order.
 {¶ 47} The magistrate granted Mr. Rice's motion to modify reducing his support obligations under the temporary order from an amount in excess of $3,000 per month to child support payments in the amount of $1,998.66 per month. The magistrate then calculated the child support arrearage based upon the $1,998.66 figure, from the date of the filing of the motion to modify (January 27, 2005) until the date of the trial (August 18, 2004). For that fourteen month period, the magistrate concluded that the resulting arrearage was $27,981.24. The trial court modified the arrearage amount, by subtracting $1,500 Ms. Kaminski owed Mr. Rice. As a result, the court determined that the amount of support arrearages Mr. Rice owed Ms. Kaminski was $26,481.24.
 {¶ 48} Mr. Rice's argument that the trial court should have considered the payments he allegedly made to Ms. Kaminski, as evidenced in Exhibit G, is meritless. It is incumbent upon the parent requesting a modification of child support to show that a change has occurred to necessitate a modification and to provide the court with suitable verification of current and past income and payments made. See, e.g.Olesky v. Olesky, 8th Dist. No. 82646, 2003-Ohio-5657, at ¶ 36-37. Here, Mr. Rice did not present the court with any documentation such as cancelled checks or receipts for the payments he allegedly made to Ms. Kaminski. Under these circumstances, we are unwilling to find that the trial court abused its discretion in rejecting the self-serving ledger Mr. Rice prepared in an attempt to reduce his child support arrearage.
 {¶ 49} We overrule Mr. Rice's fourth assignment of error. *Page 14 
 {¶ 50} Imputation of Income
 {¶ 51} Mr. Rice challenges the trial court's determination regarding imputed income in the amount of $90,000.
 {¶ 52} R.C. 3119.01 (C)(11)(a) includes within the definition of potential income, "imputed income," which is defined as income the parent would have earned if fully employed. In order to impute income, a trial court must first make a determination that the parent is voluntarily unemployed or underemployed. Inscoe v. Inscoe (1997),121 Ohio App.3d 396, 424. Whether a parent is voluntarily unemployed or underemployed is a determination within the trial court's discretion and will be upheld absent an abuse of discretion. Rock v. Cabrai (1993),67 Ohio St.3d 108, 112; Hardman v. Hardman, 166 Ohio App.3d 479,2006-Ohio-1793, at ¶ 10.
 {¶ 53} Once the court makes a determination as to whether the parent is voluntarily unemployed or underemployed, it must decide what the parent's potential income is based upon a number of factors found in R.C. 3119.01 (C)(11). These factors include: the parent's prior employment experience; the parent's education; the parent's physical and mental disabilities, if any; the availability of employment in the geographic area in which the parent resides; the prevailing wage and salary levels in the geographic area in which the parent resides; the parent's special skill and training; whether there is evidence that the parent has the ability to earn the imputed income; the age and special needs of the child for whom child support is being calculated; the parent's increased earning capacity because of experience; and any other relevant factor. *Page 15 
 {¶ 54} Mr. Rice contends that the trial court abused its discretion because it failed to consider all of the statutory factors. For support, Mr. Rice relies on Badovick v. Badovick (1998), 128 Ohio App.3d 23. However, in the subsequent decision of Raush v. Raush, 8th Dist. Nos. 87000 and 87147, 2006-Ohio-3847, the court held that there was no abuse of discretion in failing to consider all statutory factors. The court reasoned that it was not bound by Badovick since that decision was decided before the enactment of R.C. 3119.01. Id. at ¶ 27.
 {¶ 55} In this case, a review of the record demonstrates that the trial court took into account all relevant statutory factors, based upon the evidence the parties submitted.[3]
 {¶ 56} Because Mr. Rice failed to file any tax returns after 2001 (when his Sports Weekend, Inc. business had a gross profit of $713,564), the court considered tax returns from 1999 through 2001. Mr. Rice reported income of $215,000 in 1999; $293,847 in 2000; and $293,847 in 2001. Mr. Rice testified that he was planning on re-establishing his Sports Weekend business. Thus, the court was warranted in imputing income of $90,000 and in determining that he had the potential to earn at least that amount, based on his past earnings.
 {¶ 57} Mr. Rice's argument that the court improperly considered nonrecurring or unsustainable income is also without merit. Nonrecurring or unsustainable income, as defined in R.C. 3119.01(C)(8), is defined as an income or cash flow item that the parent receives in any of the past three years that he or she does not expect to receive on a *Page 16 
regular basis. For instance, it may be a cash flow item such as a one-time signing bonus or equity from the sale of a home, which the parent cannot expect to receive again. See Cooper v. Cooper, 12th Dist. No. CA 2003-05-038, 2004-Ohio-1368, at ¶ 25-26.
 {¶ 58} We also find that Mr. Rice's reliance on the decision ofBruno v. Bruno, 10th Dist. No. 04AP-1381, 2005-Ohio-3812 is misplaced. In Bruno, the trial court determined that the appellant's income was $150,000, where evidence was presented that he would actually be earning only $60,000. The court of appeals reversed, finding that the trial court abused its discretion. In determining how the trial court arrived at the $150,000 figure, the Tenth District found that the trial court could not have imputed his income because it had made no determination that the appellant was voluntarily underemployed. Furthermore, the court of appeals found that if the trial court had based the $150,000 income on the amount he had earned in the twelve months prior to the hearing, this was also an abuse of discretion because the income he had received for the last six months was unsustainable income.
 {¶ 59} The instant case is clearly distinguishable fromBruno. In Bruno there was direct evidence that the party was earning substantially less than the amount determined by the trial court. Furthermore, unlike the trial court in Bruno, the trial court in this case made an express finding that Mr. Rice was voluntarily unemployed. Therefore, it was proper for the court to impute income and to arrive at a figure of $90,000 after considering the relevant statutory factors. *Page 17 
 {¶ 60} We overrule Mr. Rice's fifth assignment of error.
 {¶ 61} Accordingly, we affirm the judgment of the Geauga County Court of Common Pleas, Domestic Relations Division.
WILLIAM M. O'NEILL, J., COLLEEN MARY OTOOLE, J., concur.
[1] The parties filed a number of motions to show cause that raised similar issues.
[2] The court stated that it would reserve jurisdiction to determine the tax consequences or penalties associated with distributing this asset. However, as discussed later in this opinion, the parties offered no evidence regarding the potential tax consequences of distributing proceeds from the Morgan Stanley account. Therefore, the trial court was presented with no evidence to consider on this issue.
[3] For instance, Mr. Rice failed to produce any evidence regarding the availability of employment in the geographical area in which he resides. Thus, he can hardly claim that the court erred in failing to consider this factor. *Page 1