OPINION
{¶ 1} Defendant-appellant, A. Graves Williams, III ("husband"), appeals from the Judgment Entry and Decree of Divorce of the Warren County Court of Common Pleas, Domestic Relations Division, imputing income for child support and distributing marital assets and debts.
 {¶ 2} Husband and appellee, Lisa A. Williams ("wife") were married August 25, *Page 2 
1984. The husband testified that his father set up a trust for him and his two siblings in 1970. The trust was designed so that withdrawal of 50 percent of the trust principal could begin when the husband reached 35 years-of-age and 100 percent at age 40. The trust was reportedly exhausted during the last 12 years of the marriage. While it is not entirely clear from the record provided to this court, this trust may have had a value in the $2 million range.
 {¶ 3} The couple separated November 17, 2004. At the time of the divorce proceedings, the two children born to the marriage were minors. A decision granting a divorce was issued on June 30, 2006, with the decree of divorce filed in August 2006.
 {¶ 4} The husband now appeals the decision of the trial court, presenting four assignments of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "The trial court erred in imputing income to Husband for the purposes of calculating the parties' child support obligations because it failed to refer to the factors mandated for its consideration by R.C. 3119(C)(11)[sic] and abused its discretion."
 {¶ 7} The trial court imputed income to husband in the amount of $75,000 and calculated child support with that figure. The husband argues the decision was in error because the trial court did not specifically mention the R.C. 3119.01(C)(11) factors. Father also argues the decision was an abuse of discretion because he lacked a college degree, he earned more than $75,000 a year only when employed by his father's company, and he made no more than $18,000 in the decade after his employment contract was bought-out by the successor to his father's company.
 {¶ 8} Before a trial court may impute income to a parent, the court must make a specific finding that the parent is voluntarily unemployed or underemployed. Leonard v. *Page 3 Erwin (1996), 111 Ohio App.3d 413, 417; Clark v. Smith (1998),130 Ohio App.3d 648, 663. Once a party is found to be voluntarily unemployed or underemployed, the potential income to be imputed to that party must be determined in accordance with the considerations of R.C. 3119.01(C)(11).Bruno v. Bruno, Franklin App. No. 04AP-1381, 2005-Ohio-3812, ¶ 15.
 {¶ 9} R.C. 3119.01(C)(5)(b) states, in pertinent part, for a parent who is unemployed or underemployed, "income" for child support purposes is defined as the sum of the gross income of the parent and any potential income of the parent.
 {¶ 10} R.C. 3119.01(C)(11), states that:
 {¶ 11} "`Potential income' means both of the following for a parent who the court pursuant to a court support order, or a child support enforcement agency pursuant to an administrative child support order, determines is voluntarily unemployed or voluntarily underemployed:
 {¶ 12} "(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:
 {¶ 13} "(i) The parent's prior employment experience;
 {¶ 14} "(ii) The parent's education;
 {¶ 15} "(iii) The parent's physical and mental disabilities, if any;
 {¶ 16} "(iv) The availability of employment in the geographic area in which the parent resides;
 {¶ 17} "(v) The prevailing wage and salary levels in the geographic area in which the parent resides;
 {¶ 18} "(vi) The parent's special skills and training;
 {¶ 19} "(vii) Whether there is evidence that the parent has the ability to earn the *Page 4 
imputed income;
 {¶ 20} "(viii) The age and special needs of the child for whom child support is being calculated under this section;
 {¶ 21} "(ix) The parent's increased earning capacity because of experience;
 {¶ 22} "(x) Any other relevant factor.
 {¶ 23} "(b) Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate as determined by the court or agency, * * *."
 {¶ 24} The determination that a parent is voluntarily underemployed and the decision to impute potential income to a party in a divorce will not be disturbed on appeal absent a showing of an abuse of discretion.Rock v. Cabral (1993), 67 Ohio St.3d 108, 112.
 {¶ 25} The trial court in the instant case found that a review of the husband's resume indicated that he was "substantially underemployed." The trial court did not cite to R.C. 3119.01. However, the trial court did make some findings that are factors listed in the statute. Specifically, the trial court noted the husband's good physical and mental health, lack of college education, and current employment as a musician, who also rents musical equipment and makes $18,000 a year.
 {¶ 26} The trial court also noted that the husband had "substantial business abilities."[1] The trial court found that the husband worked his "way up through the [Irwin Company] and by 1993 made $110,508. The husband testified that his father was president of the Irwin Company. This company was purchased by another company in *Page 5 
August 1993, and the husband's five-year employment contract was bought out by the purchasing company for $500,000 before taxes, reportedly in early 1994. A non-compete clause of undisclosed duration was imposed.
 {¶ 27} The trial court also detailed the husband's employment history after the Irwin Company. During the last decade of the marriage, the husband started three businesses or ventures that failed, but not before hundreds of thousands of dollars of the husband's pre-marital trust was consumed.
 {¶ 28} The husband testified at the hearing that he most recently earned $18,000 in the music business. The trial court made a finding based upon the testimony from wife's business associate that the husband once said he would not work for less than $75,000 and would not accept a job that did not pay him $75,000 to $100,000 a year.
 {¶ 29} Unfortunately, this finding does not provide this court with the ability to review the trial court's decision to impute income in the amount of $75,000. The husband's statement that he was not willing to accept a job with a salary less than $75,000 may support the finding that he is now voluntarily underemployed. It does not, however, provide sufficient evidence of the amount of income to be imputed to the husband. The husband has not worked in the same field as the position he held at Irwin Company for the last ten years of the marriage. Further, there was no evidence presented at trial as to the availability of employment and the prevailing wage and salary levels in the geographic area in which the husband resides. See R.C. 3119.01(C)(11)(iv) and (v).
 {¶ 30} Accordingly, we sustain the husband's first assignment of error and remand this issue to the trial court for a further determination and explanation under R.C. 3119.01 of the amount of income assigned to the husband for purposes of the child *Page 6 
support calculation.
 {¶ 31} Assignment of Error No. 2:
 {¶ 32} "The trial court erred in holding that Husband had failed to prove that the equity in the marital residence was his separate property."
 {¶ 33} The husband argues in this assignment of error that the trial court erred in its decision because all of the equity in the marital home in question was attributable to money from a premarital trust for his benefit.
 {¶ 34} A trial court must determine what constitutes marital property and what constitutes separate property in a divorce proceeding.Singh v. Singh, Warren App. No. CA2002-08-080, 2003-Ohio-2372, ¶ 5. The trial court may begin with the presumption that property acquired during the marriage is marital unless evidence is offered to rebut the presumption. Id. at ¶ 6.
 {¶ 35} Marital property includes personal property that currently is owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a).
 {¶ 36} Separate property includes property acquired by one spouse prior to the date of the marriage, property found by the trial court by clear and convincing evidence to be a gift given to only one spouse, as well as passive income and appreciation acquired from separate property by one spouse during the marriage. R.C. 3105.171(A)(6)(a).
 {¶ 37} Unless it is part of a distributive award to supplement the division of marital property, a spouse's separate property must be awarded to that spouse. R.C. 3105.171(D); Barkley v. Barkley (1997),119 Ohio App.3d 155, 166.
 {¶ 38} This court reviews a trial court's determination regarding the classification *Page 7 
of property as marital under a manifest weight of the evidence standard.Johnson v. Johnson (Sept. 27, 1999), Warren App. No. CA99-01-001. The factual findings of the trial court as to the classification of property as marital are reviewed to determine whether they are supported by competent, credible evidence. Id; Barkley at 159. An appellate court should not reverse the judgment of the trial court unless it appears that the trial court abused its discretion in dividing marital property.Barkley.
 {¶ 39} As we previously noted, the amount of assets contained in the premarital trust is not clear from the record. In addition, the record is not clear as to the timing and amount of payments from the trust. The husband argues that he sufficiently traced large deposits made to the parties' bank accounts as money from the pre-marital trusts used toward the purchase of the marital home.
 {¶ 40} The trial court found that monies used for the marital home came from Irwin Company stock separate from the Irwin Company stock contained in the trust. The trial court indicated that the value of this stock was enhanced by the husband's efforts, and the funds were commingled in the parties' bank account. See R.C. 3105.171(A)(6)(b) (commingling will destroy separate character of property if the separate property is not traceable). Therefore, the trial court ruled that the marital home involved no separate property.
 {¶ 41} A review of the record before us does not show any evidence that the husband possessed Irwin Company stock outside of the trust. The trial court's finding that no separate property was used to purchase the marital home is not supported by the record, nor does the record support the finding that the husband's efforts increased the value of the Irwin Company stock. The trial court abused its discretion in this *Page 8 
regard.[2]
 {¶ 42} Evidence was presented from the husband that the influx of large sums of money into the parties' bank accounts came from the trust or the buyout of the husband's employment contract. The husband presented evidence that the buy-out occurred after the December 2003 purchase of the home, and the wife failed to rebut that evidence.
 {¶ 43} The husband carried his burden to prove that the down payment on the home came from the trust. Zeefe v. Zeefe (1998),125 Ohio App.3d 600, 614. The husband also offered some evidence to show that the payoff of the original mortgage was made from trust *Page 9 
assets. See Zeefe (a determination of the traceability will be reversed only if finding is against manifest weight of evidence). Accordingly, we sustain the husband's second assignment of error, and remand to the trial court for further proceedings on the issue of the marital home and separate property therein.
 {¶ 44} Assignment of Error No. 3:
 {¶ 45} "The trial court erred in failing to determine whether certain items of personalty in the parties' possession were loans or gifts, and in either case, whether the loans or gifts were marital or separate."
 {¶ 46} The husband argues that certain jewelry, furniture and household furnishings were loaned to them or to the wife by the husband's mother and were not gifts. The husband and his mother testified at trial that numerous items were loans, not gifts, and should not be considered marital property and should not be considered separate property of the wife.
 {¶ 47} The requirements of a gift are that the owner have the present donative intent "to transfer the title and right of possession of the particular property to the donee then and there" and a delivery of the gift with relinquishment of ownership, dominion and control over it.Helton v. Helton (1996), 114 Ohio App.3d 683, 685-686.
 {¶ 48} In regard to certain furniture and personal property, the trial court stated that it "has no authority to return items to Husband's mother." "All furniture and pictures (Exhibits UU-III), which Husband's mother contends are hers, shall be placed with items in Exhibit RRR and divided by alternate selection."
 {¶ 49} The trial court's statement about its lack of authority to return items to the husband's mother implies that the trial court believed that some, if not all, of the Exhibit UU-III *Page 10 
items were proven not to be gifts to the wife or not marital property.[3]
 {¶ 50} The items the trial court found belonged with the husband's mother could have been awarded to the husband as his separate property, which would not necessarily result in a return to the husband's mother, or the husband's mother could have been joined as a party with an interest in the personal property. See Riley v. Riley (May 8, 2000), Butler App. No. CA99-06-107; Koval v. Koval (July 13, 1998), Portage App. No. 96-P-0268.
 {¶ 51} Regardless of the process employed, those items should not be part of the pool of marital property subject to the alternative selection process. The husband's third assignment of error is sustained. This matter is remanded to the trial court for the proper disposition of the items it finds to be separate or marital property or property of the husband's mother.
 {¶ 52} Assignment of Error No. 4:
 {¶ 53} "The trial court erred in characterizing Husband's business debts as his separate property while simultaneously characterizing Wife's business debts as marital property."
 {¶ 54} As we have previously noted in the prior assignments of error, the trial court's decision regarding whether a debt is separate or marital is reviewed under a manifest weight of the evidence standard.Johnson v. Johnson, Warren App. No. CA99-01-001.
 {¶ 55} The wife testified to less than $44,000 in mostly credit card debt. She indicated these debts were incurred for household expenses or for her home-based *Page 11 
cosmetics business. The trial court ruled these marital debts should be paid from the sale of the marital home. The trial court found that the husband had indicated approximately $48,000 in mostly credit card debts, with little or no documentation, and a $7,000 sales tax liability he was contesting. The husband testified that the debts were associated with his businesses. The trial court ruled that the husband was responsible for these debts.
 {¶ 56} We find no abuse of discretion by the trial court. The record indicates that the wife had the responsibility of paying the household debts toward the end of the marriage and her business provided for the household. She testified that the credit cards she possessed were charged for household expenses. The husband was unable to show contrary evidence. Therefore, the husband's fourth assignment of error is overruled.
 {¶ 57} Even though we have overruled the husband's assignment of error dealing with marital and business debts, we realize that the "reconciliation" the trial court configured for the equitable division of property may need to be reconfigured, after considering the other issues we are remanding.
 {¶ 58} Having sustained the first, second, and third assignments of error, this matter is reversed and remanded to the trial court for proceedings consistent with the law and the opinion of this court.
BRESSLER and POWELL, JJ., concur.
 JUDGMENT ENTRY
The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and this cause is remanded to the trial court for further proceedings according to law and consistent with the Opinion filed the same date as this Judgment Entry.
It is further ordered that a mandate be sent to the Warren County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Judgment Entry shall constitute the mandate pursuant to App.R. 27.
Costs to be taxed in compliance with App.R. 24.
[1] While we are aware that the husband now wishes to emphasize his business failures, the trial court apparently based its finding of "substantial business abilities" on the accomplishments touted in the husband's resume admitted at trial and the fact that the husband was employed with the Irwin Company during the first nine years of marriage.
[2] The wife testified that the down payment was paid from stocks "purchased through the company that he [husband] was working for [Irwin Company]." However, the wife responded to further questions on this issue by stating that one or two scenarios other than the trust "could" explain the source of the down payment, but "[t]o be quite honest, I don't really know." The wife also indicated that she did not know if she had documents tracing the funds.
[3] We also note that the trial court found that the wife failed to prove that a wide gold necklace and a "W" necklace were gifts to her, but it could not return them to husband's mother. These two items, and any other items the trial court believed belonged to husband's mother should not be part of the marital property for alternative selection. *Page 1