OPINION
{¶ 1} Appellant, Deborah A. Bouffard, administratrix of the estate of Michael Cook ("Cook"), appeals from a jury verdict in favor of appellees, Robinson Memorial Hospital[1] ("RMH") and Dr. Stephen Battles ("Battles") on appellant's claims for medical malpractice and wrongful death. We affirm.
 {¶ 2} In the 1980's Cook was diagnosed with high blood pressure and began taking medication to treat this problem. Cook did not take medication for his condition between 1987 and 1991. Cook began experiencing shortness of breath upon exertion and exertional chest pressure sometime in 1991.
 {¶ 3} Cook was seen at Townhall II Medical Clinic on January 15, 1992 where he filled out a patient history form. Cook noted that he had smoked for twenty-two years; had a history of high blood pressure; heart problems; heart palpitations upon exertion; gas; and substernal chest pain relieved with rest. Dr. Marged scheduled a stress test for Cook at RMH, however when Cook appeared for this test he was not on the schedule and the test was not performed.
 {¶ 4} Cook then saw a cardiologist, Dr. Adler, on February 10, 1992. Dr. Adler prescribed blood pressure medication and told Cook to follow up by telephone with blood pressure readings in two weeks. Cook did so and Dr. Adler prescribed a six-month supply of blood pressure medication. Appellees presented evidence that Dr. Adler also told Cook that he should have a stress test. Appellant disputed this. Nonetheless, Cook did not take a stress test, nor were any follow up appointments scheduled. Dr. Adler also indicated that Cook suffered from gastric problems.
 {¶ 5} Cook took his medication as prescribed until the prescription expired. In October 1992, Cook again developed shortness of breath, heartburn, and gas. He also suffered from nausea and vomiting.
 {¶ 6} On February 26, 1993, Cook went to Med Center One. Upon arrival, Cook met with Ann Argonti ("Argonti"), a nurse, who asked questions about his condition. Cook stated that he suffered from heartburn several hours after eating and abdominal pressure. Argonti testified that she asked Cook if he had a history of other health problems. Cook did not disclose any and none were noted in the Med Center One records. The records indicate that Cook stated he was not taking any medications and was not treating with a physician.
 {¶ 7} Cook then saw Dr. Battles. Upon examination Cook's vital signs were normal and he was not in any distress. Battles testified that he asked Cook questions about his medical history but Cook did not tell Battles of his history of high blood pressure or that he had been treated by a cardiologist. During the examination Cook told Battles that he had severe gas and abdominal pain. Cook did not tell Battles that he suffered from shortness of breath, nausea, vomiting, or heart palpitations. Cook did express a concern that he might have ulcers.
 {¶ 8} Battles determined that Cook suffered from acid peptic disease and ordered an upper GI, gall bladder and esophagus test for March 2, 1993. Battles also prescribed Zantac, Maalox, and a bland diet. Battles instructed Cook to follow up with him forty-eight hours after the tests. Battles also instructed Cook to come back in or go to the emergency room if his condition became worse.
 {¶ 9} Cook went for the tests as instructed. During the evening after the tests were performed Cook's condition took a drastic turn. Cook developed shortness of breath and chest pains. Paramedics were called and he was taken to RMH were he died. The death certificate lists the cause of death as cardiac arrest due to coronary artery disease.
 {¶ 10} Appellant filed suit alleging claims of medical malpractice and wrongful death. Appellant claimed that Dr. Battles failed to take an adequate history and failed to properly consider that Cook's symptoms could be indicative of coronary artery disease. Appellees contended that Battles' treatment conformed to the standard of care and that he asked proper questions to obtain a history from Cook but that Cook failed to provide adequate information. Appellees contended that Cook's symptoms were indicative of gastric difficulties and not a heart condition.
 {¶ 11} The case proceeded to jury trial and the jury returned a verdict in favor of appellees. Bouffard appeals raising eight assignments of error:
 {¶ 12} "[1.] The jury's verdict was against the manifest weight of the evidence.
 {¶ 13} "[2.] The trial court committed prejudicial error by improperly denying [p]laintiff the right to present admissible evidence through the production of witnesses and the elicitation of testimony in [p]laintiff's case-in-chief.
 {¶ 14} "[3.] The trial court committed prejudicial error by improperly denying [p]laintiff the right to present rebuttal evidence through witnesses and documents.
 {¶ 15} "[4.] The trial court committed prejudicial error by improperly denying [p]laintiff the right to pursue a claim for spoliation of evidence.
 {¶ 16} "[5.] The jury's verdict was the product of passion and prejudice ignited by the misconduct of Dr. Battles and his counsel, and was further fueled by the trial court's refusal to sustain objections to same, or to allow [p]laintiff to defuse it.
 {¶ 17} "[6.] The trial court committed error prejudicial to [p]laintiff by refusing to dismiss jurors for cause.
 {¶ 18} "[7.] The introduction of unsworn testimony by [d]efendants' counsel in closing argument concerning matters not introduced as evidence during trial constitutes prejudicial error to [p]laintiff which is per se reversible.
 {¶ 19} "[8.] The trial court committed prejudicial error in overruling [p]laintiff's [m]otions to exclude the testimony of Dr. Cannone and [p]laintiff's [m]otion for [d]irected [v]erdict based on the lack of any competent evidence that Dr. Battles met the standard of care."
 {¶ 20} In her first assignment of error appellant argues that the jury's verdict was against the manifest weight of the evidence. We disagree.
 {¶ 21} We will not reverse a judgment that is supported by some competent, credible evidence going to the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, at syllabus. The trial judge is best able to view the witnesses and observe their demeanor when he weighs the credibility of their testimony; therefore, we presume that the findings of the trier of fact are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. The weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact. Shore, Shirley Co. v. Kelley
(1988), 40 Ohio App.3d 10, 15.
 {¶ 22} Appellant argues that the only competent, credible evidence presented at trial established that Battles failed to obtain an adequate history and to recognize that Cook's symptoms and complaints could also be caused by a cardiac condition. Appellant presented expert testimony on these issues.
 {¶ 23} However, appellee presented expert testimony that Battles asked appropriate questions of Cook as to his medical history and that, given the symptoms and complaints presented and the history obtained, Battles pursued a proper course of action.
 {¶ 24} While a review of the record leads to the conclusion that this was a close case and a jury could have determined that appellees were negligent, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. The issue of the credibility of the witnesses was for the trier of fact and appellant has not overcome the presumption that the findings of the trier of fact were correct. Appellant's first assignment of error is without merit.
 {¶ 25} As we have discussed, one of the primary areas of contention in this case was the history obtained from Cook by Battles. At trial, appellant sought to introduce evidence of a patient information sheet that Med Center One allegedly used to obtain a patient's medical history. Appellant sought to establish that such a form was used at the time Cook was seen at Med Center One. Appellees denied that a form was used at that time. In her second assignment of error, appellant argues that the trial court erred by precluding her from presenting evidence relating to when Med Center One began using a patient information form.
 {¶ 26} Appellant failed to make an offer of proof on this issue. Therefore, we are unable to determine that the trial court abused its discretion in excluding the evidence. Garrett v. Sandusky (1994),68 Ohio St.3d 139, 141. Even assuming appellant made a proper offer of proof, we cannot say that the trial court abused its discretion in excluding the evidence.
 {¶ 27} Appellees denied that a patient information form was used at the time of Cook's visit. Appellant purportedly had information that the forms were used. Appellees filed a motion in limine to exclude such evidence. As grounds for the motion, appellees argued that this issue was first raised approximately two weeks before trial and that appellant had presented no evidence to show that appellees had used a patient information form at the time Cook was treated at Med Center One. Appellant filed a brief opposing appellees' motion. Appellant presented no evidence in support of her motion. Appellant merely alleged that she was developing evidence to support this contention. As noted above, appellant made no proffer at trial that would demonstrate that such evidence existed. Appellant also argued that she was prevented from taking the deposition of an employee of RMH, Carol Bartha, on this issue. However, appellant did call Bartha as a witness at trial.
 {¶ 28} Further, appellant litigated this case for over seven years before raising this issue. This obviously raises some concern about the prejudice to appellees of allowing such evidence so late in the proceeding.
 {¶ 29} Also, appellant's claims focused on Battles' failure to obtain an adequate history. The records from Med Center One provide only limited information as to Cook's history, thus supporting appellant's claims. Had a patient information form been used, it could only have supported appellees' defense on the claims as presented. That is, assuming a patient information sheet was used it would have shown either that an adequate history was obtained or that Cook failed to respond to questions accurately. In either case, such evidence does not support appellant's claim that Dr. Battles failed to obtain an adequate history. Therefore, appellant's second assignment of error is without merit.
 {¶ 30} In her third assignment of error, appellant first argues that the trial court erred when it refused to allow her to present rebuttal evidence to establish when Med Center One first began use of a patient information form. We reject this argument for the reasons set forth in our analysis of appellant's second assignment of error.
 {¶ 31} This argument also fails because appellant first questioned witnesses about the use of a patient information form during her case-in-chief. Thus, the evidence appellant sought to introduce was not proper rebuttal evidence. See, e.g., Katz v. Enzer (1985),29 Ohio App.3d 118, at paragraph two of the syllabus (stating, "When testimony on a material issue is first presented during defendant's case-in-chief, R.C. 2315.01(D) requires that plaintiff be afforded the opportunity to rebut or explain the evidence.)
 {¶ 32} Appellant also argues that the trial court erred by refusing to admit the original, certified copies of the Townhall II records. This dispute centers on the "Dr. Meckler Letter."
 {¶ 33} Dr. Adler's records were eventually found to contain a letter dated February 10, 1992, from Dr. Adler to Dr. Meckler at Townhall II. This letter indicated that Dr. Adler had recommended that Cook undergo a stress test. Other than Adler's testimony, this is the only evidence of such an instruction and appellant contended that Dr. Adler never gave Cook such an instruction. There was no "Dr. Meckler" at Townhall II and the Townhall II records did not contain a copy of the letter.
 {¶ 34} We first note that appellant stipulated to the authenticity of the Townhall II records in her trial brief. Appellant contends that the Townhall II records as admitted, contained a copy of the Dr. Meckler letter. This is unsupported by the record. The Townhall II records as admitted did not contain the Dr. Meckler letter. Therefore, the trial court did not abuse its discretion in refusing to admit the certified original records. Appellant's third assignment of error is without merit.
 {¶ 35} In her fourth assignment of error appellant argues that the trial court erred when it refused to allow appellant to amend her complaint to allege spoliation of evidence. We disagree.
 {¶ 36} Appellant premises her argument on the alleged use by Med Center One of a patient information sheet at the time of Cook's visit. Appellant argues that the trial court should have permitted her to present evidence on this issue and to amend her complaint.
 {¶ 37} Civ.R. 15 permits a party to amend a complaint under certain circumstances. However, in the instant case, appellant never moved to amend her complaint to allege spoliation of evidence. Appellant essentially argues that the trial court should have permitted her to present evidence to establish that a patient information form was used in 1993 and then amend her pleadings to conform to the evidence.
 {¶ 38} As we discussed above, appellant did not move to amend her complaint, nor did she proffer evidence to show that a patient information form was used by Med Center One on 1993. Thus, appellant has waived this assignment of error.
 {¶ 39} Even had appellant not waived this assignment of error, the trial court did not abuse its discretion when it prohibited appellant from presenting evidence on this issue for the reasons discussed in the second assignment of error. Further, the trial court would not have erred in denying appellant's motion to amend the pleadings to conform to the evidence. Civ.R. 15(B).
 {¶ 40} We addressed a similar situation in Mach v. Accettola
(1996), 112 Ohio App.3d 282. There we stated:
 {¶ 41} "The rule governing the trial court's discretionary authority in this situation was set forth by this court in Bright v. E C Lyons (Sept. 30, 1993), Geauga App. No. 93-G-1753, unreported, 1993 WL 407361, where we held that:
 {¶ 42} "`When there is an objection to evidence offered because it is outside the pleadings, the trial court shall allow an amendment provided the two-prong test is satisfied:
 {¶ 43} "`(1) * * * the presentation of the case's merits will be subserved thereby, and (2) the objecting party does not satisfy the court that admission of the evidence would prejudice him in maintaining his case upon the merits.' Hall v. Bunn (1984), 11 Ohio St.3d 118, 121
* * *.
 {¶ 44} "However, the complaining party must submit a motion to trigger this procedural mechanism. Civ.R. 15(B). Although the trial court did not expressly state its reason for sustaining appellants' objection to the proffered evidence, apparently the trial court decided that appellants would be prejudiced by the evidence due to lack of notice. We perceive no error under these circumstances because appellees failed to submit the additional allegation in their counterclaim or amended counterclaim. We conclude that the trial court did not abuse its discretion in denying the evidence proffered by appellees * * *." Id. at 290.
 {¶ 45} Such is the case here. This action was filed in 1994. Trial commenced in November 2001. After seven years of litigation, appellant sought to change its theory of the case and assert new claims at the last minute. Apparently the trial court decided, and rightfully so, that such a course of action would be prejudicial to appellees. Appellant's fourth assignment of error is without merit.
 {¶ 46} In her fifth assignment of error, appellant argues that the jury's verdict was improper because of references by Battles to his faith in God. We find no merit to this contention.
 {¶ 47} "In order to conclude that the verdict was the result of passion or prejudice, it must appear in the record that the award was induced by:
 {¶ 48} "`3. * * * (a) admission of incompetent evidence, (b) by misconduct on the part of the court or counsel, or (c) by any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of damages that should be awarded.'" Shoemaker v. Crawford (1991),78 Ohio App.3d 53, 65, quoting Fromson Davis Co. v. Reider (1934),127 Ohio St. 564, paragraph three of the syllabus.
 {¶ 49} In the instant case, Battles' reference to his faith in God was made in response to a question about the effect this lawsuit had on him and his family. The testimony covers less than a page and a half of a transcript of over 1000 pages. It cannot reasonably be said that such testimony improperly swayed the jury. See, e.g., State v. Hall (Aug. 3, 1994), 2d Dist. No. 13805, 1994 Ohio App. LEXIS 3376, at 15-16. Thus, appellant's fifth assignment of error lacks merit.
 {¶ 50} In her sixth assignment of error, appellant argues that the trial court erred by failing to dismiss for cause, a juror who was a licensed practical nurse employed by RMH and who knew Argonti. Appellant has waived this argument because she failed to exercise all of her peremptory challenges. See, e.g., McGarry v. Horlacher, 149 Ohio App.3d 33,2002-Ohio-3161, ¶ 15. In her seventh assignment of error, appellant argues that comments by appellees' counsel during closing argument amounted to unsworn testimony and thus require reversal. We disagree.
 {¶ 51} During opening statements appellees' attorneys referred to expert testimony from Dr. Ericson, who they intended to call on appellees' behalf. Dr. Ericson did not testify. During closing arguments appellees' counsel stated that Dr. Ericson did not testify because his testimony would have agreed with the testimony of appellees' other expert, Dr. Cannone. Appellant contends that such argument constituted reversible error.
 {¶ 52} Counsel is afforded wide latitude in closing argument. To warrant reversal, the complaining party must show that there is room for doubt that the verdict was influenced by the improper remarks, rather than being rendered on the evidence. Borucki v. Skiffey (Sept. 14, 2001), 11th Dist. Nos. 2000-T-0029 and 2000-T-0057, 2001 Ohio App. LEXIS 4129, at 5, citing Pesek v. University Neurologists Assn. (2000),87 Ohio St.3d 495.
 {¶ 53} Here, while appellees' counsel's comments were improper, the court sustained appellant's objection. The trial court also, during the course of the proceedings, instructed the jury that closing arguments are not evidence. While these comments should not have been made, a review of the record makes clear that the jury's verdict was based on the evidence and not these remarks. Appellant's seventh assignment of error is without merit.
 {¶ 54} In her eighth assignment of error, appellant argues that the trial court erred by failing to exclude the expert testimony of Dr. Cannone because Dr. Cannone did not state that Battles met the appropriate standard of care and because he did not state his opinions to a reasonable degree of medical certainty. We disagree.
 {¶ 55} First, a review of the record leads to the conclusion that Dr. Cannone did testify that Battles met the standard of care. Second, Dr. Cannone was not required to express his opinion on the standard of care to a reasonable degree of medical certainty. Proctor v. Patel (Mar. 27, 2002), 9th Dist. No. 3173-M, 2002 Ohio App. LEXIS 1393, at 7, (stating: "* * * there is no requirement that an expert opinion on the appropriate standard of care must be stated in terms of probability.) See, also, Paul v. Metrohealth St. Luke's Med. Ctr. (Oct. 22, 1998), 8th Dist. No. 71195, 1998 Ohio App. LEXIS 4964; Bruni v. Tatsumi (1976),46 Ohio St.2d 127. Appellant's eighth assignment of error is without merit.
 {¶ 56} For the foregoing reasons the judgment of the Portage County Court of Common Pleas is affirmed.
Judgment affirmed.
Donald R. Ford, P.J., concurs.
William M. O'Neill, J., dissents with dissenting opinion.
[1] Dr. Battles worked at Med Center One, an urgent care facility owned by RMH. Appellant claimed that RMH was liable for Battles' negligence based on agency by estoppel, i.e., RMH held Battles out as an employee of Med Center One when in fact, Battles was an independent contractor.