OPINION
{¶ 1} Appellant, Leonard B. Bolden, III ("husband") appeals from the judgment entry of divorce rendered by the Geauga County Court of Common Pleas; moreover, appellee, Cynthia K. Bolden (n.k.a. Cynthia A. Takacs) ("wife") has filed a cross-appeal from the same judgment. For the reasons expressed below, we modify the judgment at issue and affirm the judgment as modified. *Page 2 
 {¶ 2} Husband and wife were married on August 3, 1990 and had no children from their marriage. The parties separated in June of 2005. Wife filed her complaint for divorce on October 26, 2005. At the time of the divorce, wife was 53 years old and husband was 48 years old with both parties in good health.
 {¶ 3} During the majority of the parties' marriage, wife worked as a full time employee at the law firm of Vorys, Sater, Seymour, Pease. When she resigned, in June of 2004, wife was earning over $37,000.00 per year. Husband, a sales director, earned significantly more than wife. At trial, evidence of husband's earnings from 2000 through 2005 was introduced. In 2000, husband earned $195,889.00; in 2001, husband earned 206,912.00; in 2002, husband earned $206,600.00; and in 2003, husband earned $195,146.00. Husband switched jobs in 2004, the same year wife resigned, but continued to earn well over $150,000.00. In fact, at trial, husband indicated he could earn up to $188,000.00 in 2006.
 {¶ 4} The parties each possessed 401(K) plans through their employers; wife's contained a stipulated value of $101,000.00 and husband's contained a stipulated value of $135,000.00. Husband also held an IRA with a stipulated value of $7,650.00.
 {¶ 5} When the parties were first married, they lived in a home owned by wife. In 1994, they sold the house and purchased a three bedroom one and a half bathroom ranch home on a slab for $125,400.00. At the time of the divorce, the home was valued at $185,000.00. Husband testified the parties lived a "moderately comfortable" lifestyle while wife asserted they lived very comfortably.
 {¶ 6} During the pendency of the proceedings, husband paid all household bills and provided wife with $300.00 during each pay period. In total, the temporary support order amounted to approximately $2,950.00 per month. *Page 3 
 {¶ 7} The parties owned a horse racing business where they raised, trained, and raced horses. The parties stipulated, at the time of trial, that the business still existed but had no value. The parties stipulated to the value of all marital assets and debts. A contested divorce trial was held to equitably divide the marital property and determine the rate of spousal support. After the trial, the trial court divided the assets and debts which resulted in husband receiving a net of $120,139.00 and wife receiving a net of $110,025.00. The court ordered the sale of the marital home from which the first $10,114.00 of the proceeds would go to wife to equalize the property division. The amount remaining from the sale would be split evenly between the parties. The court ordered husband to pay wife $5,000.00 per month for a period of two years, and $3,500.00 per month, for an additional two years. The court declined jurisdiction to modify or terminate this order.
 {¶ 8} Husband appeals the support order and the division of property; moreover, wife has filed a cross-appeal relating to the division of property and the trial court's order requiring the marital home to be sold. Husband's direct appeal shall be addressed first.
 {¶ 9} Husband's first assignment of error asserts:
 {¶ 10} "The trial court abused its discretion awarding spousal support to plaintiff-appellee in the amount of five thousand dollars per month for two years and three thousand five hundred dollars per month for two years."
 {¶ 11} A trial court possesses broad discretion in awarding spousal support under R.C. 3105.18(C)(1). Gordon v. Gordon, 11th Dist. No. 2004-T-0153, 2006-Ohio-51, at ¶ 13. The factors enumerated under R.C.3105.18(C)(1) guide the trial court's discretion and must be considered in the calculation of the award. Mulliken v. Mulliken, *Page 4 
11th Dist. No. 2005-G-2615, 2006-Ohio-4178, at ¶ 12. After considering the R.C. 3105.18(C)(1) factors, the trial court must then set forth the basis for its award with sufficient detail to ensure adequate appellate review. Id. An appellate court reviews the trial court's award for an abuse of discretion. Id. A trial court abuses its discretion where the award of spousal support is either arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983) 5 Ohio St.3d 217, 219.
 {¶ 12} R.C. 3105.18(C)(1) sets forth fourteen factors the trial court is required to consider when making an award of spousal support:
 {¶ 13} "(a) The income of the parties, from all sources * * *;
 {¶ 14} "(b) The relative earning abilities of the parties;
 {¶ 15} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 16} "(d) The retirement benefits of the parties;
 {¶ 17} "(e) The duration of the marriage;
 {¶ 18} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 19} "(g) The standard of living of the parties established during the marriage;
 {¶ 20} "(h) The relative extent of education of the parties;
 {¶ 21} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 22} "(j) The contribution of each party to the education, training, or earning ability of the other party * * *; *Page 5 
 {¶ 23} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 24} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 25} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 26} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 27} Husband first argues that the trial court failed to consider all relevant R.C. 3105.18(C)(1) factors in determining the nature, amount, terms of payment, and duration of spousal support.
 {¶ 28} In its judgment entry, the trial court concluded that "Husband shall pay directly to Wife spousal support, after considering that Husband has paid just over one year at $2,950.00/month as follows: $5,000.00/month beginning the first day of the month following the filing hereof, for a period of two years, and $3,500.00 per month, for an additional 2 years. The spousal support terminates on wife's death, remarriage, or cohabitation. The Court shall not retain jurisdiction to modify or terminate spousal support."
 {¶ 29} In arriving at this conclusion, the trial court considered the substantive character of factors (a), (b), (c), (d), (e), (g), (i), and (n). The court did not consider factors (f), (h), (j), (k), (l), or (m). However, the trial court's failure to consider these factors does not undermine the award because they were either irrelevant or there was no evidence produced relating to these factors. Specifically, with respect to (f), the *Page 6 
parties had no children; further, although appellee testified she believed she contributed to appellant's earning ability via general emotional support, she failed to substantiate or expand upon this conclusion. Next, the parties' relative education was not a matter emphasized at trial. Thus, factor (h), did not merit explicit consideration. Moreover, there was no evidence offered that appellee would need additional education, training, or experience to obtain the employment she was seeking at the time of the hearing. Factor (k) was therefore not relevant. Next, there was no evidence that either party lost any income production capacity due to his or her marital responsibilities. Accordingly, factor (m) did not require consideration.
 {¶ 30} Finally, although the trial court failed to consider the tax consequences of the award of spousal support pursuant to factor (l), the record fails to disclose any evidence submitted on this issue. Where the parties do not produce evidence of tax consequences in the trial court, such consequences are merely speculative and need not be considered.Rice v. Rice, 11th Dist. Nos. 2006-G-2716 and 2006-G-2717,2007-Ohio-2056, at ¶ 31, citing, Bauman v. Bauman, 6th Dist. No. E-01-025, 2002-Ohio-2172, at ¶ 16. Here, the only direct remarks pertaining to the tax consequences of a spousal support award is found in wife's closing argument. However, counsel's closing argument is not substantive evidence for the finder of fact to consider. See, e.g.,Bouffard v. Robinson Memorial Hosp., 11th Dist. No. 2002-P-0004,2003-Ohio-7224, at ¶ 53. Because no evidence was offered on this issue of tax consequences of the award, the court properly omitted it from consideration. We therefore hold the trial court properly considered the statutory factors under R.C. 3105.18(C)(1).
 {¶ 31} Husband next asserts that the spousal support award was excessive under the facts and circumstances of the case. Husband argues that the evidence *Page 7 
failed to support the trial court's conclusion that the parties enjoyed a "high standard of living." We disagree.
 {¶ 32} While husband did testify the parties lived a "moderately comfortable" lifestyle that was "nothing special," appellee testified their standard of living was "very comfortable" and "[c]loser to great than average." Furthermore, the court possessed evidence of the parties' gross annual income within the last 6 years: in 2000, the parties income was $216,757.00; in 2001, their income was $229,986.00; in 2002, their income was $227,805.00; in 2003, their income was $216,837.00; in 2004, their income was $154,035.00; and, in 2005, their income was $159,192.00. The parties combined annual income dropped in 2004 because of wife's resignation and husband's decision to change jobs. However, testimony established that husband would make approximately $188,000.00 in 2006.
 {¶ 33} Prior to 2004, wife worked as a receptionist in a law firm and, at the time of her resignation, earned approximately $37,000.00. She has not had steady employment since her resignation. She testified she would possibly earn between $5,000.00 and $6,000.00 in 2006 "filling in" at her former place of employment. Although she had applied for several different positions, she had received no responses at the time of the hearing. She testified her monthly expenses are $5,616.00, which include payment of bills but does not include savings or unanticipated expenses.
 {¶ 34} In light of the evidence of the parties' marital income as well as their actual current individual incomes and future potential income capacity, the trial court's award of $5,000.00 per month for two years and $3,500.00 for an additional two years is not excessive. Therefore, the trial court did not abuse its discretion by ordering the amounts at issue. *Page 8 
 {¶ 35} Husband's first assignment of error lacks merit.
 {¶ 36} Husband's second assignment of error asserts: "The trial court erred and abused its discretion in its division of property."
 {¶ 37} An appellate court reviews a trial court's division of marital property for an abuse of discretion. Rice, supra, at ¶ 33. "[W]hen considering whether a trial court has abused its discretion in dividing marital property, a reviewing court `should not review discrete aspects of the property division out of context of the entire award.'" Id., quoting, Baker v. Baker (1992), 83 Ohio App.3d 700. Rather, an appellate court must consider whether the trial court's division of marital property, as a whole, was arbitrary or unreasonable. Id. at 700-701.
 {¶ 38} Husband first argues the trial court abused its discretion when it offset the differences in the parties' retirement benefits against credit card debts, cash, and equity in the marital residence without determining the present value of the benefits. We disagree.
 {¶ 39} The record reveals that both parties stipulated to the value of the retirement benefits; to wit, appellant's 401(K) had a stipulated value of $135,000.00 and appellee's 401(K) had a stipulated value of $101,000.00.[1] Appellant also possessed an IRA with a stipulated value of $7,650.00. No additional evidence was submitted to the trial court pertaining to these values nor did appellant object to the values. A party who fails to challenge an issue before the trial court is deemed to have waived the issue on appellate review. Shover v. CordisCorp. (1991), 61 Ohio St.3d 213, 220. Because the stipulations were the only evidence put forth regarding the value of the retirement *Page 9 
accounts, the trial court did not abuse its discretion in accepting the figures as accurate representations of the value of the accounts.
 {¶ 40} That said, the trial court divided the property accordingly:
 {¶ 41} Wife was awarded her 401(K) in the amount of $102,000.00; the parties' tax refund in the amount of $9,425.00 (stipulated value); and wife was ordered to pay debts to J.C. Penney and Kohl's (a total debt of $1,400.00 to which the parties stipulated). Wife's net total was $110,025.00.
 {¶ 42} Alternatively, husband was awarded his 401(K) in the amount of $135,000.00; his IRA in the amount of $7,650.00; Cleveland Browns personal seat licenses valued at $2,000.00 (stipulated value of asset); he was ordered to pay a Chase Visa debt in the amount of $16,822.00 (stipulated debt), an Ohio Savings Visa debt in the amount of $3,689.00 (stipulated debt), and appellee's Chase Visa debt in the amount $4,000.00 (stipulated debt). In total, husband received $120,139.00.
 {¶ 43} When added together, husband's award was $10,114.00 greater than that of wife's. The trial court therefore ordered the difference to be awarded to wife from the equity of the marital home upon its sale. Given the comprehensive nature of the stipulations, we do not believe the trial court abused its discretion arriving at the foregoing property distribution. Husband's argument lacks merit.
 {¶ 44} Next, husband asserts the trial court abused its discretion in awarding appellee all available cash and present day assets, including an alleged 56% of husband's monthly take home pay, while saddling him with considerable credit card debt.
 {¶ 45} We first point out that the trial court did not award wife all the parties' present day assets. Although the sale had not occurred as of the hearing date, *Page 10 
husband will nevertheless receive one-half of the net proceeds of the sale minus the first $10,114.00 (set aside to equalize the property division set forth supra).
 {¶ 46} That said, while the order of $5,000.00 per month of spousal support award may translate into 56% of husband's 2005 monthly income, he also testified he could make $188,000.00 in 2006, i.e., nearly $30,000.00 more than his earnings in 2005. Given the evidence of husband's significant current income (and potential for increase of the same in the future) and the meager income on which wife currently subsists, we do not believe the trial court's spousal support order manifests an abuse of discretion.
 {¶ 47} Next, husband asserts the trial court erred by not requiring wife to reimburse appellant for the $11,000.00 she removed from the parties' home equity line of credit subsequent to their separation. We disagree.
 {¶ 48} Testimony reflects that the $11,000.00 withdrawal was spent in the following manner: $3,000.00 to pay for wife's initial attorney fees and $8,000.00 to pay bills. The former withdrawal occurred in June of 2005, upon the parties' separation, while the latter occurred in November of 2005, as a result of husband's decision to stop payment on the temporary spousal support between the months September and November of 2005 (the spousal support included payment of household bills as well as $300.00 per each pay period). Excluding this three month period, husband submitted he had paid wife a sum of $2,972.00 (for bills and spousal support) per month starting at the time of the separation. As a result, husband failed to pay wife nearly $9,000.00 between September and November of 2005.
 {¶ 49} Although the trial court required husband to shoulder the entire $11,000.00, it did so in an effort to render an equitable distribution of the parties' marital *Page 11 
assets. Husband would have paid wife the great balance of this debt had he remained consistent in his support payments between September and November of 2005; we recognize that the remaining $2,000.00 was connected to an expense for which husband may not have been necessarily responsible. However, to achieve the goal of an equitable distribution, the trial court assigned this debt to husband. Observing the property distribution in its totality, we do not believe the trial court abused its discretion in doing so.
 {¶ 50} Finally, husband asserts the court abused its discretion when it figured the $1,100.00 obligation to J.C. Penney in the distribution of assets and liabilities without offsetting it with the furniture that it was used to purchase. We agree with husband's assertion.
 {¶ 51} Husband correctly notes that the parties stipulated that the $1,100.00 J.C. Penney debt would be paid by wife as personal, not a marital debt. However, the trial court used the debt in dividing the marital assets. The $1,100.00 personal debt should not be used in figuring the property division. $1,100.00 should therefore be added to wife's ultimate property distribution for a total of $111,125.00.
 {¶ 52} However, we point out that the trial court erred in listing wife's 401 (K) at $102,000.00. The parties stipulated that wife's 401(K) was worth $101,000.00. Due to this error, we modify the trial court's order to reflect the proper amount, i.e., $101,000.00. Subtracting $1000.00 from the $111,125.00 results in an award of $110,125.00, an amount $100.00 over the actual amount awarded by the trial court. In light of this overage, we further modify the trial court's order to reflect that wife should be paid the first $10,014.00 from the sale of the parties' marital home rather than the first $10,114.00. *Page 12 
 {¶ 53} With the exception of the foregoing modifications, husband's second assignment of error is overruled.
 {¶ 54} In her cross-appeal, wife asserts three assignments of error. Her first assignment of error reads: "The trial court erred and abused its discretion in failing to offset the present value of the parties' social security benefits against marital assets in its division of property."
 {¶ 55} Under her first assignment of error, wife argues the trial court erred by failing to offset the values of the parties' social security benefits against other marital property. In support wife cites the Supreme Court of Ohio's decision in Neville v. Neville,99 Ohio St.3d 275, 2003-Ohio-3624. In Neville, the Supreme Court held:
 {¶ 56} "[i]n making an equitable distribution of marital property in a divorce proceeding, a trial court may consider the parties' future Social Security benefits in relation to all marital assets." Id. at syllabus.
 {¶ 57} Neville stands for the proposition that a trial court ispermitted, but not mandated, to consider social security benefits towards the end of an equitable division of assets. However, "[s]ocial security benefits, under federal law, are separate property and are not subject to division by a trial court." Harrison v. Harrison, 11th Dist. No. 2004-A-0003, 2005-Ohio-6293, at ¶ 29, citing, Neville.
 {¶ 58} Here the record indicates the present value of both parties' social security benefits is fairly significant; to wit, husband's present value is $157,166.80 and wife's is $113,068.00 Although there is an approximate $44,100.00 difference between the relative value of the parties' respective benefits, we do not believe the court erred in failing to offset the property division by this amount. Performing such a calculation may be warranted where one but not both parties will receive benefits or where one party *Page 13 
has not worked for a lengthy period of time. Neither of these scenarios matches the case sub judice. Because Neville does not impose an absolute obligation of domestic courts to consider such benefits in relation to all assets and benefits in the instant matter, while not equal, are comparably large, we hold the trial court did not abuse its discretion in not setting off the division by the difference in the benefits.
 {¶ 59} Wife's first assignment of error on cross-appeal is overruled.
 {¶ 60} Wife's second assignment of error on cross-appeal asserts:
 {¶ 61} "The trial court erred and abused its discretion in failing to find wife had a separate interest in the marital home."
 {¶ 62} Under this assigned error, wife asserts the trial court erred in its determination that she failed to meet her burden to trace and establish a separate property interest in the marital home. Wife asserts she is entitled to $21,450.00 as a separate property interest in the home. In support, she points to an undated, unsigned "separation agreement" which was never filed with the court. The so-called "agreement" indicates wife and husband had, at some point, "agreed" that wife was entitled to and would receive $21,450.00 in the parties' marital home as premarital interest.
 {¶ 63} A partying seeking to establish an asset as separate property has the burden, by a preponderance of the evidence, to establish and trace the asset as separate property. Bizjak v. Bizjak, 11th Dist. No. 2004-L-083, 2005-Ohio-7047, at ¶ 11. A trial court must make findings as to whether a party requesting the court to classify an asset as separate property has met his or her burden of proof and successfully traced an asset to separate property. Derrit v. Derrit, 163 Ohio App.3d 52, 61,2005-Ohio-4777. *Page 14 
 {¶ 64} In the instant matter, the trial court explicitly determined that wife "failed to meet her burden to trace and establish any separate property * * *" in the marital home. The court did not abuse its discretion in drawing this conclusion.
 {¶ 65} First, the "separation agreement" from which wife draws her alleged entitlement to $21,450.00 separate property in the marital home has no persuasive value. As indicated above, it is undated, unsigned, and never filed. Furthermore, at trial husband vehemently denied agreeing to such terms. Neither the record, nor the document itself establishes what wife asserts it purports to establish. Thus, this aspect of wife's argument is without merit.
 {¶ 66} At trial, however, wife testified she put "$9,000.00 some dollars" into the purchase of the marital home. This money was allegedly derivative of the sale of the premarital residence. However, the record demonstrates that $1,000.00 of earnest money was paid and $3,560.00 was deposited in escrow for a total of $4,560.00 down on the home. Although wife states on appeal that she financed "at least" the $4560.00 down payment with the proceeds from the sale of the premarital home, she never specifically testified to this at trial. A review of the record shows that wife failed to adequately connect her testimony to the amounts set forth in the exhibits. Therefore, the trial court did not abuse its discretion when it determined appellant failed to meet her burden.
 {¶ 67} Wife's second assignment of error on cross-appeal is overruled.
 {¶ 68} In her final assignment of error on cross-appeal, wife asserts:
 {¶ 69} "The trial court erred and abused its discretion in ordering the sale of the marital home." *Page 15 
 {¶ 70} Wife argues that because she desired to keep the marital home and claimed she would be able to maintain the house, the trial court abused its discretion in ordering its sale.
 {¶ 71} In its December 8, 2006 judgment entry, the trial court determined "it would be inappropriate to award the home to wife under the circumstances." Although the trial court did not discuss the reasoning which led to its conclusion, the manner in which the trial court divided the marital assets discloses a patent, rational foundation for its action.
 {¶ 72} We have previously held, supra, that the court did not abuse its discretion in its division of the marital property and debt. The court's ultimate division resulted in husband receiving $120,139.00 and wife receiving $111,125.00, a disparity of $10,014.00 (wife's total and the amount of disparity reflect the modifications ordered by this court under our analysis of husband's second assignment of error). To equalize the division, the court ordered, in light of this court's modification, that wife receive the first $10,014.00 from the sale of the marital home. We believe the court's actions, under these circumstances, were within its sound discretion.
 {¶ 73} Had the court awarded wife the home, fairness would have mandated that husband receive his share in the home's equity. The parties' net equity in the marital home had a value of $92,000.00. After subtracting the $10,014.00, the equity is reduced to $81,986.00. Dividing this number by 2 equals $40,993.00. Hence, in light of the remaining property division, wife would have been required to pay husband nearly $41,000.00 in order to properly equalize the assets. Given the testimony regarding wife's limited current means, it is unclear how she could shoulder such a financial burden. *Page 16 
 {¶ 74} We therefore hold the trial court's decision to order the sale of the marital home effectuated a sound, reasonable result. The outcome does not unduly burden either party and reflects an attentive observance to the parties' respective interests. The decision to order the sale was equitable and therefore the court did not abuse its discretion.
 {¶ 75} Wife's third assignment of error on cross-appeal is therefore overruled.
 {¶ 76} For the reasons set forth above, husband's two assignments of error are overruled; furthermore, wife's three assignments of error on cross-appeal are overruled. Therefore, the Geauga County Court of Common Pleas, Domestic Relations Division, is hereby modified and affirmed as modified.
COLLEEN MARY O'TOOLE, J., concurs,
DIANE V. GRENDELL, J., concurs in judgment only.
[1] The trial court's judgment entry lists wife's 401(K) at $102,000.00; however, the stipulated amount was $101,000.00. We shall formally address this oversight infra. *Page 1